UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>KURT ADAMS, in his official capacity as )<br>Chairman of the Maine Public Utilities )<br>Commission; SHARON M. REISHUS, in her )<br>official capacity as Commissioner of the Maine )<br>Public Utilities Commission; DENNIS L. KESCHL )<br>in his official capacity as Acting Administrative )<br>Director of the Maine Public Utilities Commission; )<br>VERIZON NEW ENGLAND INC. D/B/A )<br>VERIZON MAINE )<br>)<br>       Defendants. ) | CIVIL ACTION NO.:<br><br>COMPLAINT |

Plaintiff, the United States of America, by its undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. In this action, the United States seeks to prevent the disclosure of highly confidential and sensitive government information that the defendant officers of the Maine Public Utilities Commission ("MPUC") have sought to obtain from Verizon New England Inc. d/b/a Verizon Maine ("Verizon") without proper authorization from the United States. Compliance with the August 9, 2006 Order of the MPUC (the "Order") or other similar order issued by those officers would first place Verizon in a position of having to confirm or deny the existence of information that cannot be confirmed or denied without causing exceptionally grave harm to national security. And if particular telecommunication carriers are indeed supplying foreign intelligence information to the Federal Government, compliance with the Order or other similar order would

1

require disclosure of the details of that activity.  The defendant state officers' attempts to obtain such information are invalid under the Supremacy Clause of the United States Constitution and are preempted by the United States Constitution and various federal statutes.  This Court should therefore enter a declaratory judgment that the State Defendants do not have the authority to seek confidential and sensitive federal government information.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345.

3.  Venue lies in the District of Maine pursuant to 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

4.  Plaintiff is the United States of America, suing on its own behalf.

5.  Defendant Kurt Adams is the Chairman of the Maine Public Utilities Commission, and maintains his offices in Kennebec County.  He is being sued in his official capacity.

6.  Defendant Sharon M. Reishus is a Commissioner on the Maine Public Utilities Commission, and maintains her offices in Kennebec County.  She is being sued in her official capacity.

7.  Defendant Dennis L. Keschl is Acting Administrative Director of the Maine Public Utilities Commission and maintains his offices in Kennebec County.  He is being sued in his official capacity.

8.  Defendant Verizon New England Inc. d/b/a Verizon Maine ("Verizon") is a New York corporation with a principal place of business in Boston, Massachusetts and that has offices at One Davis Farm Road, Portland, Maine, and has received a copy of the August 9, 2006 Order.

**STATEMENT OF THE CLAIM**

I.  **The Federal Government Has Exclusive Control Vis-a-Vis the States With Respect to Foreign-Intelligence Gathering, National Security, the Conduct of Foreign Affairs, and the Conduct of Military Affairs.**

9.  The Federal Government has exclusive control vis-a-vis the States over foreign-intelligence gathering, over national security, and over the conduct of war with foreign entities. The Federal Government controls the conduct of foreign affairs, the conduct of military affairs, and the performance of the country's national security function.

10.  In addition, various federal statutes and Executive Orders govern and regulate access to information relating to foreign intelligence gathering.

11.  For example, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1), confers upon the Director of National Intelligence the authority and responsibility to "protect intelligence sources and methods from unauthorized disclosure."

12.  Federal law also makes it a felony for any person to divulge classified information "concerning the communication intelligence activities of the United States" to any person who has not been authorized by the President, or his lawful designee, to receive such information. 18 U.S.C. § 798.

13.  And federal law establishes unique protections from disclosure for information related to the National Security Agency. Federal law states that "nothing in this . . . or any other law . . . shall be construed to require disclosure of . . . any function of the National Security Agency, [or] of any information with respect to the activities thereof." 50 U.S.C. § 402 note.

14.  Several Executive Orders have been promulgated pursuant to these constitutional and statutory authorities that govern access to and handling of national security information.

3

15. First, Executive Order No. 12958, 60 Fed. Reg. 19825 (April 17, 1995), as amended by Executive Order No. 13292, 68 Fed. Reg. 15315 (March 25, 2003), prescribes a uniform system for classifying, safeguarding and declassifying national security information. It provides that:

> A person may have access to classified information provided that:
>
> (1) a favorable determination of eligibility for access has been made by an agency head or the agency head's designee;
>
> (2) the person has signed an approved nondisclosure agreement; and
>
> (3) the person has a need-to-know the information.

Exec. Order No. 13292, Sec. 4.1(a). "Need-to-know" means "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." Exec. Order No. 12958, Sec. 4.1(c). Executive Order No. 12958 further states, in part, that "Classified information shall remain under the control of the originating agency or its successor in function." Exec. Order No. 13292, Sec. 4.1(c).

16. Second, Executive Order No. 12968, 60 Fed. Reg. 40245 (Aug. 2, 1995), establishes a uniform Federal personnel security program for employees of the Federal Government, as well as employees of an industrial or commercial contractor of a Federal agency, who will be considered for initial or continued access to the classified information. The Order states, in part, that "Employees who are granted eligibility for access to classified information shall . . . protect classified information in their custody from unauthorized disclosure . . . ." Exec. Order No. 12968, Sec. 6.2(a)(1).

17. In addition, the courts have developed several doctrines that are relevant to this

dispute and that establish the supremacy of federal law with respect to national security information and intelligence gathering. For example, suits alleging secret espionage agreements with the United States are not justiciable.

18. The Federal Government also has an absolute privilege to protect military and state secrets from disclosure. Only the Federal Government can waive that privilege, which is often called the "state secrets privilege."

## II. Alleged NSA Activities and the Federal Government's Invocation of the State Secrets Privilege

19. On May 11, 2006, USA Today published an article alleging that the NSA has been secretly collecting the phone call records of millions of Americans from various telecommunications carriers. The article reported on the purported activities of telecommunications carriers. No United States official has confirmed or denied the existence of the alleged program subject to the USA Today article. Unclassified Declaration of Keith B. Alexander in *Terkel v. AT&T, et al.*, ("Alexander Decl.") ¶ 8 (Exhibit A, attached to this Complaint).

20. Since January 2006, more than 30 class action lawsuits have been filed alleging that telecommunications carriers, including Verizon, have unlawfully provided assistance to the NSA. The first lawsuit, *Hepting v. AT&T Corp., et al.*, was filed in the District Court for the Northern District of California in January 2006. Case No. C-06-0672-VRW.

21. Those lawsuits, including the *Hepting* case, generally make two sets of allegations. First, the lawsuits allege that the telecommunications carriers unlawfully intercepted the contents of certain telephone calls and emails and provided them to the NSA. Second, the lawsuits allege that telecommunications carriers have unlawfully provided the NSA with access to calling

records and related information.

22. The Judicial Panel on Multidistrict Litigation granted a motion to transfer all of these lawsuits to a single district court for pretrial proceedings on August 9, 2006. *In re: National Security Agency Telecommunications Records Litigation*, MDL Docket No. 1791 (JPML).

23. In both the *Hepting* and *Terkel v. AT&T, et al.*, 06-cv-2837 (MFK) (N.D. Il.), cases, the state secrets privilege has been formally asserted by the Director of National Intelligence, John D. Negroponte, and the Director of the National Security Agency, Lieutenant General Keith B. Alexander. The Director of National Intelligence is the "head of the intelligence community" of the United States. 50 U.S.C. § 403(b)(1). General Alexander has also invoked the NSA's statutory privilege. *See* 50 U.S.C. § 402 note.

24. As in the *Terkel* case, where the United States invoked the state secrets privilege, the MPUC's August 9, 2006 Order seeks information in an attempt to confirm or deny the existence of alleged intelligence-gathering activities.

25. In *Terkel*, Director Negroponte stated that "the United States can neither confirm nor deny allegations concerning intelligence activities, sources, methods, relationships, or targets" and that "[t]he harm of revealing such information should be obvious" because "[i]f the United States confirms that it is conducting a particular intelligence activity, that it is gathering information from a particular source, or that it has gathered information on a particular person, such intelligence-gathering activities would be compromised and foreign adversaries such as al Qaeda and affiliated terrorist organizations could use such information to avoid detection." *See* Unclassified Declaration of John D. Negroponte in *Terkel* ("Negroponte Decl.") ¶ 12 (Exhibit B, attached to this Complaint). Furthermore, "[e]ven confirming that a certain intelligence activity or relationship does *not* exist, either in general or with respect to specific targets or channels,

6

would cause harm to the national security because alerting our adversaries to channels or individuals that are not under surveillance could likewise help them avoid detection." *Id.* Director Negroponte went on to explain that "if the government, for example, were to confirm in certain cases that specific intelligence activities, relationships, or targets do not exist, but then refuse to comment (as it would have to) in a case involving an actual intelligence activity, relationship, or target, a person could easily deduce by comparing such responses that the latter case involved an actual intelligence activity, relationship, or target." *Id.* In light of the exceptionally grave damage to national security that could result from any such information, both Director Negroponte and General Alexander have explained that "[a]ny further elaboration on the public record concerning these matters would reveal information that would cause the very harms that my assertion of privilege is intended to prevent." *Id.*; *see* Alexander Decl. ¶ 7.

26. The assertion of the state secrets privilege in *Terkel* and the privilege of the National Security Agency therefore covered "any information tending to confirm or deny (a) alleged intelligence activities, such as the alleged collection by the NSA of records pertaining to a large number of telephone calls, (b) an alleged relationship between the NSA and AT&T (either in general or with respect to specific alleged intelligence activities), and (c) whether particular individuals or organizations have had records of their telephone calls disclosed to the NSA." Negroponte Decl. ¶ 11; *see* Alexander Decl. ¶¶ 7-8. In other words, the state secrets privilege covers precisely the same types of information that the State Defendants seek from Verizon.

### III. The State Defendants Seek to Require the Production of Potentially Highly Classified and Sensitive Information

27. The MPUC proceeding began on May 8, 2006, when a complaint was filed by James D. Cowie requesting that the MPUC open an investigation into whether Verizon, in Maine, was

aiding the NSA in an alleged wiretapping program. Verizon sought to dismiss the complaint by, *inter alia*, noting that federal law prohibited providing specific information regarding Verizon's alleged cooperation, or lack thereof, with the NSA. Verizon also noted that this matter could not be reviewed by the MPUC.

28. The MPUC itself recognizes that federal law limits its authority to seek information regarding alleged intelligence-gathering activities. The MPUC issued a Procedural Order on June 23, 2006, that recognized the "more difficult issue" of "whether certain federal statutes and/or the so-called 'state secrets privilege' will prevent [the MPUC] from obtaining relevant information in the course of a Commission investigation." The Department of Justice subsequently advised the MPUC that any attempts to obtain information from the telecommunication carriers could not be accomplished without harming national security, and responses would be inconsistent with federal law. The Department of Justice also advised the MPUC that its authority to obtain information in this instance is preempted by federal law *See* Letter of July 28, 2006, from Peter D. Keisler to Chairman Adams and Commissioner Reishus, attached as Exhibit C (without enclosures).

29. Nevertheless, on August 9, 2006, the State Defendants issued the Order that, among other things, seeks to "require that Verizon provide sworn affirmations of representations it made in its filed response to the complaint." A copy of the August 9, 2006 Order is attached as Exhibit D.

30. This August 9, 2006 Order specifies that it was issued "[p]ursuant to our authority set forth in 35-A M.R.S.A. § 112(2)." Exhibit D at 3. The cited provisions of state law provide, *inter alia*, that the Commission has the power to investigate the management of the business of all public utilities. Me. Rev. Stat. Ann. tit. 35-A, § 112(1). Other provisions provide that

"[e]very public utility shall furnish the commission . . . [a]ll information necessary to perform its duties and carry into effect this Title," *id.* § 112(2), that the Commission "by order or subpoena" may require the utility to produce documents. *Id.* § 112(4). If a public utility or person fails to comply with an order, decision, rule, direction, demand, or requirement of the Commission, that entity is in contempt of the Commission. Me. Rev. Stat. Ann. 35-A, § 1502.

31. The Order demands that responses be submitted by Verizon on or before August 21, 2006. Exhibit D at 4. Defendants issued this Order notwithstanding being advised by the Department of Justice on July 28, 2006, that the MPUC's attempts to require telecommunication carriers to provide information would be inconsistent with, and preempted by, federal law. *See* Exhibit C. Indeed, a comprehensive body of federal law governs the field of foreign intelligence gathering and bars any unauthorized disclosures as contemplated by this Order, thereby preempting state law, including: (i) Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note; (ii) section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1); and (iii) 18 U.S.C. § 798(a).

**IV.    The State Defendants Lack Authority to Compel Compliance with the Order.**

32. The State Defendants' attempts to seek or obtain the information requested in the August 9, 2006 Order, as well as any related information, are fundamentally inconsistent with and preempted by the Federal Government's exclusive control over all foreign intelligence gathering activities. In addition, no federal law authorizes the State Defendants to obtain the information they seek.

33. The State Defendants have not been granted access to classified information related to the activities of the NSA pursuant to the requirements set out in Executive Order No. 12958 or

Executive Order No. 13292.

34. The State Defendants have not been authorized to receive classified information concerning the communication intelligence activities of the United States in accordance with the terms of 18 U.S.C. § 798, or any other federal law, regulation, or order.

35. In seeking information bearing upon NSA's purported involvement with Verizon, the State Defendants seek disclosure of matters that the Director of National Intelligence has determined would improperly reveal intelligence sources and methods, including confirming or denying whether or to what extent such materials exist, would improperly reveal intelligence sources and methods.

36. The United States has a strong and compelling interest in preventing the disclosure of sensitive and classified information. The United States has a strong and compelling interest in preventing terrorists from learning about the methods and operations of terrorist surveillance activities being undertaken or not being undertaken by the United States.

37. As a result of the Constitution, federal laws, applicable privileges, and the United States' interest in preventing the unauthorized disclosure of sensitive or classified information, Verizon will be unable to confirm or deny their involvement, if any, in intelligence activities of the United States.

38. The United States will be irreparably harmed if Verizon is permitted or is required to disclose sensitive and classified information to the State Defendants.

**COUNT ONE – VIOLATION OF AND PREEMPTION UNDER THE SUPREMACY CLAUSE AND FEDERAL LAW
(ALL DEFENDANTS)**

39. Plaintiff incorporates by reference paragraphs 1 through 46 above.

40. The State Defendants attempts to procure the information sought through the Order,

or any other related information, are invalid under, and preempted by, the Supremacy Clause of the United States Constitution, Art. VI, Cl. 2, federal law, and the Federal Government's exclusive control over foreign intelligence gathering activities, national security, the conduct of foreign affairs, and the conduct of military affairs.

41. The State Defendants attempts to procure the information sought through the Order, or any other related information, and any responses required thereto, are also invalid because the no organ of State government, such as the Maine Public Utilities Commission, or its officers, may regulate or impede the operations of the federal government under the Constitution.

### COUNT TWO – UNAUTHORIZED DISCLOSURE OF SENSITIVE AND CONFIDENTIAL INFORMATION
### (ALL DEFENDANTS)

42. Plaintiff incorporates by reference paragraphs 1 through 48 above.

43. Providing responses to the Order or other similar orders would be inconsistent with and would violate federal law including, but not limited to, Executive Order 12958, 18 U.S.C. § 798, and 50 U.S.C. § 402 note, as well as other applicable federal laws, regulations, and orders.

### PRAYER FOR RELIEF

WHEREFORE, the United States of America prays for the following relief:

1. That this Court enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a), that the State Defendants may not enforce the Order or otherwise seek information pertaining to alleged foreign intelligence functions of the federal government and that Verizon may not provide such information, because any attempt to obtain or disclose such information would be invalid under, preempted by, and inconsistent with the Supremacy Clause of the United States Constitution, Art. VI, Cl. 2, federal law, and the Federal Government's exclusive control over foreign intelligence gathering activities, national security, the conduct of foreign affairs, and the conduct

of military affairs.

    2.  That this Court grant plaintiff such other and further relief as may be just and proper, including any necessary and appropriate injunctive relief.

Dated: August 21, 2006                          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PAULA D. SILSBY
United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS LETTER
Terrorism Litigation Counsel

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch

    */s/ Alexander K. Haas*
ALEXANDER K. HAAS
Trial Attorney, Federal Programs Branch
UNITED STATES DEPARTMENT OF JUSTICE
P.O. BOX 883
WASHINGTON, DC 20044
(202) 307-3937